IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Avana Williams,[1] | ) | Civil Action No.  8:13-cv-02930-BHH-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for Social Security Income ("SSI") benefits.  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On November 16, 2009, an application for SSI was protectively filed on behalf of Plaintiff, who was then a child under the age of 18.  [R. 167–74.]  Plaintiff turned 18 years old on October 14, 2011 during the pendency of this application.  [R. 21.]  Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration ("the Administration").    [R. 108–11, 118–19.]    Plaintiff requested a hearing before an

---

[1]At the time the application was filed, Plaintiff was under the age of 18; thus, the complaint was captioned Gina BAKER on behalf of her minor child, A.W.  [*See* Doc. 1, R. 51.]  Plaintiff, however, turned 18 on October 14, 2011.  [R. 51.]

administrative law judge ("ALJ") and on January 25, 2012, Plaintiff appeared and testified before ALJ Maria C. Northington.  [R. 49–103.]

The ALJ issued a decision on June 4, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act") since November 16, 2009, the date the application was filed. [R. 18–42.]  The ALJ explained the Childhood Standard for Disability [R. 22–24] and the Adult Standard of Disability [R. 24–25] applicable in this case. The ALJ explained that the issues before the her were (1) whether Plaintiff was disabled under § 1614(a)(3)(C) of the Act for the period before age 18; and (2) whether Plaintiff was disabled under § 1614(a)(3)(A) of the Act beginning at age 18.  [R. 21.]  At Step 1,[2] the ALJ found Plaintiff was born on October 14, 1993 and was in the "Adolescent (age 12 to attainment of age 18)" age group on November 16, 2009, the date the application was filed; Plaintiff attained the age of 18 on October 13, 2011.  [R. 25, Finding 1.]  The ALJ also found Plaintiff had not engaged in substantial gainful activity since the date the application was filed.  [R. 26, Finding 2.]    At Step 2, the ALJ found Plaintiff had the following severe impairments: seizures and depression.  [R. 26, Finding 3.]  The ALJ also determined Plaintiff had non-severe impairments of asthma and obesity.  [R. 26–27.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B.  [R. 27,  Finding 4.]  The ALJ specifically considered Childhood Listings 111.02 (Convulsive Epilepsy), 111.03 (Non-convulsive Epilepsy), and 112.04 (Mood Disorders) [R. 27] and determined that, before attaining age 18, Plaintiff did not have

---

[2] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

an impairment or combination of impairments that functionally equaled the listings. [R. 27, Finding 5.] Because Plaintiff did not have an impairment or combination of impairments that met, or medically equaled any listing or functionally equaled the listings, the ALJ found Plaintiff was not disabled prior to attaining age 18. [R. 37, Finding 6.]

The ALJ also noted that, since turning 18 year old, Plaintiff has not developed any new impairment or impairments, and she has continued to have a severe impairment or combination of impairments. [R. 37, Findings 7 & 8.] With respect to disability after turning 18, the ALJ concluded Plaintiff has not had an impairment or combination of impairments that meets or medically equals the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 37, Finding 9.] The ALJ specifically considered Listings 11.02, 11.03, and 12.04. [R. 37–39.]

Before addressing Step 4, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a wide range of work at all exertional levels but with the following non-exertional limitations. She has no limitations for sitting, standing and/or walking in 8-hour workday. Secondary to her history of seizures, she is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. She retains the capacity to understand, remember and carry-out simple instructions and perform simple tasks as consistent with unskilled work. Secondary to asthma and in the abundance of caution as the claimant smokes, she is to avoid concentrated exposure to respiratory irritants such as flumes, odors, smoke, gases and poor ventilation. She is to avoid concentrated exposure to extremes of heat or cold. In the course of work, she is to have no contact with the general public. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week.

3

[R. 39, Finding 10.]  The ALJ determined Plaintiff has no past relevant work.  [R. 40, Finding 11.]  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  [R. 40, Finding 15.]  Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, since October 13, 2011, the day the claimant attained age 18, through the date of the decision.  [R. 41, Finding 16.]  Thus, the ALJ declined to award SSI benefits finding Plaintiff was not disabled as defined in § 1614(a)(3)(C) of the Act prior to October 13, 2011, the date she attained age 18, and has not been under a disability, as defined in § 1614(a)(3)(A) of the Act, since the day Plaintiff attained age 18 through the date of the decision. [R. 42.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on October 25, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)    failing to give logically or legally sufficient reasoning for rejecting the opinion of Plaintiff's treating physician Dr. Carroll Pinner [Doc. 18 at 26–34], and,

(2)    failing to properly assess Plaintiff's obesity at Step 2 of the sequential evaluation  [*id.* at 34–35].

Plaintiff also contends the Appeals Council failed to properly consider new, material evidence submitted by Plaintiff that "might have affected the findings of the fact-finder."  [*Id.* at 35–38.] The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

4

(1)    properly weighed the opinion of Plaintiff's treating physician, Dr. Carroll Pinner, finding that it conflicted with the evidence as a whole [Doc. 19 at 4–8], and,

(2)    properly considered Plaintiff's obesity throughout the sequential process in accordance with SSR 02-1p [*id.* at 8–9].

The Commissioner also argues that Plaintiff's submission of new evidence to the Appeals Council does not warrant remand under *Meyer vs. Astrue,* 662 F.3d 700 (4th Cir. 2011), because, even considering the additional evidence, substantial evidence still supports the ALJ's decision. [*Id.* at 9–12.] Accordingly, the Commissioner requests that the Court affirm the ALJ's decision. [*Id.* at 12.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

5

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and

immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207

(citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010
WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-
cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human
Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without

11

considering the claimant's age, education, and work experience.[4]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404,

---

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that

Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

---

affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

14

opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

16

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,

17

severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician Opinions**

Plaintiff takes issue with the ALJ's weighing of the opinion evidence provided by Dr. Carroll Pinner ("Dr. Pinner"). Specifically, Plaintiff contends that, on April 11, 2011, Dr. Pinner completed a Seizures Residual Functional Capacity Questionnaire ("SRFCQ"), finding that Plaintiff was incapable of even "low stress" jobs, and a Mental Residual Functional Capacity Questionnaire ("MRFCQ"), finding Plaintiff had "no useful ability to function" in several areas with respect to the mental abilities needed for unskilled work. [Doc. 18 at 26–29.] Plaintiff argues that, while the ALJ is free to resolve conflicts in the record, the ALJ failed to explain what "other" evidence she found to be inconsistent with Dr. Pinner's opinions such that she was entitled to give his opinions less than controlling weight. [*Id.* at 29–34.] The Commissioner contends the ALJ properly discounted Dr. Pinner's assertion because his opinion that Plaintiff could not work as a result of her mental impairments conflicted with the record and his treatment notes. [Doc. 19 at 5–8.] The Court agrees with the Commissioner that the ALJ properly weighed Dr. Pinner's opinions and she sufficiently explained why she accorded his opinions little weight.

SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the

> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

physician is entitled to deference:

> Medical sources often offer opinions about whether an
> individual who has applied for title II or title XVI disability
> benefits is "disabled" or "unable to work," or similar
> statements of opinions.  In addition, they sometimes offer
> opinions in other work-related terms; for example, about an
> individual's ability to do past relevant work or any other type of
> work.  Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner.  Such opinions on these issues must not
> be disregarded.  However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(3)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," including an opinion that the claimant is disabled,

the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

### *Summary of Dr. Pinner's Medical Opinions*

As stated above, on April 11, 2011, Dr. Pinner completed a MRFCQ with respect to

Plaintiff's mental impairments and her abilities and aptitudes needed to perform different

types of work.  [R. 659– 62.]  Dr. Pinner indicated that he saw Plaintiff between one and

three times per month.  [R. 659.]  Dr. Pinner found Plaintiff had anhedonia or pervasive loss

of interest in almost all activities; decreased energy; blunt, flat, or inappropriate affect;

somatization unexplained by organic disturbance; mood disturbance; difficulty thinking or

concentrating; pathological dependence, passivity or agressivity; persistent disturbance of

mood or affect; perceptual or thinking disturbance; deeply ingrained, mal adaptive patterns

of behavior; seclusiveness or autistic thinking; emotional withdrawal or isolation; loss of intellectual ability of 15 IQ points or more; and a history of multiple physical symptoms, for which there are no organic findings, of several years duration beginning before age 30 and have caused Plaintiff to take medicine frequently, see a physician often, and alter life patterns significantly. [R. 659–60.]   With respect to the abilities and aptitudes needed to do unskilled work, Dr. Pinner found Plaintiff was:

*   *limited but satisfactory* in her ability to carry out very short and simple instructions and maintain attention for two hour segments;[7]

*   *seriously limited but not precluded*[8] from remembering work-like procedures and understanding and remembering very short and simple instructions;

*   *unable to meet competitive standards*[9] with respect to her ability to maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usual strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; or accept instructions and respond appropriately to criticism from supervisors;

*   *without useful ability to function*[10] with respect to her ability to work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from

---

[7]The Court notes Dr. Pinner found Plaintiff to be both *limited but satisfactory* and *unable to meet competitive standards* with respect to her ability to maintain attention for two hour segments.  [R. 660–61.]

[8] Seriously limited but not precluded is defined on the form as: "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." [R. 660.]

[9] Unable to meet competitive standards is defined on the form as: "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  [R. 660.]

[10] No useful ability to function is defined on the form as: "an extreme limitation meaning the patient cannot perform this activity in a regular work setting."  [R. 660.]

21

psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; or be aware of normal hazards and take appropriate precautions.

[R. 660–61.]  Dr. Pinner also found Plaintiff unable to perform semi-skilled or skilled work.

[R. 661.]

With respect to Plaintiff's abilities and aptitude needed to do particular types of jobs,

Dr. Pinner found Plaintiff was:

* *seriously limited but not precluded* from adhering to standards of neatness and cleanliness;

* *unable to meet competitive standards* with respect to her ability to maintain proper socially appropriate behavior; travel in unfamiliar places; or use public transportation;

* *without useful ability to function* with respect to her ability to interact appropriately with the general public.

[*Id.*]  Dr. Pinner noted Plaintiff had a low IQ and opined Plaintiff's psychiatric condition exacerbated her experience of pain or other physical symptoms.  [R. 662.]  Dr. Pinner further opined Plaintiff would miss work more than four days per month; she would not be able to manage benefits on her own; she was content to do nothing the rest of her life; her impairments would last more than 12 months; and her impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.  [*Id.*]

Dr. Pinner completed a SRFCQ indicating that he has been treating Plaintiff since birth and that she suffers from chronic depression, borderline IQ, motivation problems, and pseudo-seizures.  [R. 663.]  Dr. Pinner failed to provide any information with respect to the frequency of Plaintiff's seizures, whether she loses consciousness, the dates of her last three seizures, or whether there were warnings of impending seizures. [*Id.*]  Dr. Pinner

noted that there were precipitating factors such as stress or exertion but did not elaborate.

[*Id.*] He noted Plaintiff did not have a history of injury during seizure and was compliant

with taking medication, however, the medication did not make a difference in the frequency

of the seizures. [R. 664.] Dr. Pinner also noted Plaintiff did not suffer from ethanol or other

drug abuse related seizures, her seizures would not likely disrupt co-workers, and she

would likely need more supervision at work than an unimpaired worker. [*Id.*] He further

opined Plaintiff could not work from heights, could not work with power machines that

require an alert operator, could take the bus alone, and would be incapable of even low

stress jobs. [R. 664–65.] Dr. Pinner noted Plaintiff would miss more than four days of work

per month due to her impairments but that she has no physical limitations. [R. 665.]

### *ALJ's Treatment of Medical Opinions*

After reviewing the medical evidence of record, the ALJ concluded that, "[p]ursuant

to SSR 96-2p the undersigned provided significant and controlling weight to the opinion of

claimant's treating physician, [Dr. Pinner], based on his medical field of expertise (family

practice); the diagnostic tests used to arrive at the opinions; and the longitudinal treatment

history he enjoyed with the claimant (Exhibits 4F &18F)." [R. 30.] The ALJ explained,

> Dr. Pinner noted that the claimant's depressive symptoms had
> only last a couple of weeks and she reported they were
> improving. The claimant was sleeping and eating well. She
> was doing well with schoolwork and getting along with
> family members. No significant stressors were noted. Dr.
> Pinner had an opportunity to review notes from the claimant's
> treating neurologist as well, which indicated that her seizures
> were controlled with Topamax because her last episode
> occurred prior to Christmas. On examination, a review of
> systems was completely normal. She was observed to be well
> developed, well nourished, and in no acute distress. Her
> respiration was normal to auscultation. Her judgment and
> insight were deemed appropriate. She was oriented times

23

three.  A year and a half later, in October 2008, the claimant was again in no acute distress.  She was oriented time three. Her mood and affect were appropriate, memory intact, and she was able to understand everyday activities, consequences, her own needs and social situations (Exhibit 4F).

Dr. Pinner was also responsible for referring the claimant a neurologist for an electroencephalography (EEG), which was performed in July 2011.  The EEG produced findings that were indicative of an increased risk of seizures (Exhibit 18F/13). However, during the following, a consulting neurologist examined the claimant and found her in no acute distress.  She was oriented and her speech, language and repetition were normal.  Her visual fields were full and extraocular movements intact.  Her strength was 5/5 throughout with no drift, atrophy or fasciculation.  The neurologist opined that she was most likely experiencing partial onset seizures.  She was also noted to have not experienced seizure since starting a regimen of Keppra (Exhibit 18F/10-11).

[*Id.*]  The ALJ also noted that,

As for the weight assigned to the opinion evidence pertaining to her signs and symptoms, significant weight is afforded to a single aspect of Dr. Pinner's medical sources statement dated April 11, 2011.  He opined that the claimant has no physical limitations, which is consistent with the conclusions reached herein.  However, his opinions regarding the claimant's work-related limitations are given little weight because they are inconsistent with his own records and the medical evidence as a whole.  On the other hand, significant and controlling weight is afforded to Dr. Pinner's treatment notes from December 2011 where assessed obesity as the only other new diagnosis. She was noted to have a BMI of 47; however, her BMI was greatly reduced based on her testimony as detailed above.  Her chief complaint during this visit was depression; however she was alert, oriented times three and had no suicidal ideation (Exhibit 18F).

[R. 39–40.]

### *Discussion*

Here, Plaintiff challenges the ALJ's weighing of Dr. Pinner's April 11, 2011 opinions

that found  Plaintiff was incapable of working; however, Plaintiff failed to explain how the

24

ALJ's decision is contrary to law or the weight of the record evidence.  Plaintiff merely recites Dr. Pinner's findings, taking issue with the ALJ's confusing Dr. Pinner's treatment notes with those of his son, Dr. Benjamin Pinner ("Dr. B. Pinner"), and concludes the treatment notes of record are not inconsistent with Dr. Pinner's opinion that Plaintiff is unable to work.  [Doc. 18 at 29–30.]   However, the ALJ provided specific support for her determination.

The ALJ specifically referred to Dr. Pinner's treatment notes from April 2007 which indicated that Plaintiff was sleeping and eating well, doing well with schoolwork, and getting along with family members.  [R. 30, 380.]  Dr. Pinner stated he reviewed notes from Plaintiff's neurologist finding her seizures were well controlled with Topamax.  [R. 380.]  The ALJ also cited a March 2008 psychiatric evaluation in which Dr. Helen Mason noted Plaintiff indicated she was making good grades in school, was involved in the dance team, hung out with friends, and was in the chorus.  [R. 30, 344.]  The ALJ determined these activities were in stark contrast to the testimony provided at the hearing.  [R. 30.]

The ALJ also referred to a consultative psychological exam by Dr. Robert Phillips ("Dr. Phillips") in March 2010 finding Plaintiff capable of, among other things, maintaining most of her basic activities of daily living and interacting appropriately.  [R. 31, 466.]  The ALJ cited the October 2010 psychological exam of Dr. Phillips in which he noted that Plaintiff was pursuing her GED, had friends with whom she shopped and watched movies, was maintaining good mental awareness, and only experienced seizures every three to six months.  [R. 31, 516.]  The ALJ discussed that, in January 2012, Nurse Practitioner Elizabeth Hamilton reported that Plaintiff had not had any seizures since September 2011, her seizures occurred randomly but more frequently when she missed taking her doses of

Keppra and Topamax, and her neurological exam was essentially unremarkable. [R. 40, 708.]

Accordingly, the ALJ adequately explained her reasoning for discounting Dr. Pinner's opinion from April 11, 2011. Further, Plaintiff failed to identify any evidence overlooked or not considered by the ALJ in making her determination. Thus, upon review of the ALJ's decision, Plaintiff's arguments, and the record, the Court finds substantial evidence supports the ALJ's weighing of Dr. Pinner's opinion.

**Obesity**

Plaintiff contends the ALJ erred in assessing Plaintiff's obesity as non-severe at Step 2 of the sequential process and in failing to properly evaluate how it affected her ability to perform work functions at Step 4. [Doc. 18 at 34.] Plaintiff also argues the ALJ was not free to dismiss the effects of Plaintiff's obesity based on her finding that Plaintiff's obesity was less than level 3. [*Id.* at 35.] The Commissioner asserts the ALJ adequately discussed Plaintiff's obesity, considered its combined effects with other impairments, and properly considered it as part of the RFC analysis. [Doc. 19 at 8.] The Court agrees with the Commissioner that substantial evidence supports the ALJ's consideration of Plaintiff's obesity.

SSR 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." 67 Fed. Reg. at 57,860. SSR 02-1p also recognizes obesity can cause limitations in all exertional and postural functions. *See id.* Accordingly, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed

26

impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy.  *Id.* at 57,861.  When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity."  *Id.* at 57,862–63.

SSR 02–1p provides, in pertinent part, that

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> ...
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.
>
> ...
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

*Id.*  SSR 02-1p further states that

> [W]e [the Commissioner] will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

67 Fed. Reg. at 57,862.

The ALJ's decision whether an impairment is severe or not is a threshold determination.  *See* 20 C.F.R. § 416.920(c).  An impairment is not severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation marks omitted).  "[T]his is not a difficult hurdle for the claimant to clear."  *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n. 1 (4th Cir. 1999).

The law is clear that Plaintiff carries the burden of proof and persuasion through Step 4 of the sequential process.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step, the burden of production and proof is on the claimant."); *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992) ("The claimant bears the burden of persuasion through step four . . . ." (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).

### *Discussion*

The record in this case supports a finding that Plaintiff's obesity has such a minimal effect on her that it would not be expected to interfere with her ability to do basic work activities, particularly in light of the fact that Plaintiff did not testify to any limitations caused by her obesity and failed to provide any other evidence of additional limitations caused by her obesity.  Further, an erroneous finding that a plaintiff's impairment is not severe at Step 2 is harmless if the ALJ finds another severe impairment to proceed beyond Step 2 and considers the limitations imposed by the impairment in his RFC assessment.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Groberg v. Astrue*, 415 F. App'x 65,

28

67(10th Cir. 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation.").  Here, the ALJ found other impairments to be severe and considered the effects of Plaintiff's impairments throughout the sequential process.  Accordingly, the Court finds there is substantial evidence in the record to support the ALJ's ruling regarding her assessment of Plaintiff's obesity at Step 2 and her evaluation at Step 4.

**New Evidence to Appeals Council**

Finally, Plaintiff argues the Appeals Council erred in failing to remand this case based on new opinion evidence from Dr. B. Pinner in a letter dated July 24, 2012.  [Doc. 18 at 36.]  The Commissioner contends the Appeals Council properly declined to review the ALJ's decision and substantial evidence supports the ALJ's disability determination. [Doc. 19 at 9.]  The Court agrees with the Commissioner.

Under the SSRs, a plaintiff is permitted to offer relevant evidence to support her disability claim throughout the administrative process, and a plaintiff who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision even after the ALJ renders a decision.  20 C.F.R. §§ 416.1468, 416.1470(b).  Pursuant to 20 C.F.R. § 416.1470(b), if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the ALJ's decision.  Evidence is new "if it is not duplicative or cumulative."  *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).  It is "material" if there is a "reasonable possibility that the new evidence would have changed the outcome." *Id.*  The new evidence

offered to the Appeals Council is then made part of the record. The SSRs require only that the Appeals Council make a decision whether to review the case; and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705–06 (4th Cir. 2011).

The Fourth Circuit Court of Appeals held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* "The Appeals Council need not explain its reasoning when denying review of an ALJ decision." *Id.* at 702.

### Summary of New Evidence

Plaintiff submitted additional evidence to the Appeals Council in the form of a letter from Dr. B. Pinner dated September 24, 2012. [R. 733.] The Appeals Council made Dr. B. Pinner's letter a part of the record.[11] [R. 4.] Upon consideration, however, the Appeals Council found no reason under its rules to review the ALJ's decision and, thus, denied Plaintiff's request for review. [R. 1.]

Dr. B. Pinner's letter provided, in pertinent part, that Plaintiff's mental health issues would have a greater affect on her ability to attend school or work than her seizure activity

---

[11]The Appeals Council refers to a letter "from Ben Prinner, M.D.;" however, a review of the record and the cited letter indicates this was a scrivener's error. The letter was from Dr. Ben Pinner. [R. 733.]

30

would.  [R. 733.]  The letter noted that Plaintiff presents as apathetic, has a dull affect, complains of fatigue probably stemming from depression, has exhibited features of borderline personality disorder including self mutilation and suicidal gestures, and would have problems interacting appropriately with supervisors and coworkers in the work place and with peers and teachers in a school environment.  [*Id.*]  Dr. B. Pinner also noted that Plaintiff has had these limitations throughout her treatment history with him.  [*Id.*]

### Discussion

Upon review, the Court finds that the new evidence does not require reconsideration of the ALJ's decision.   The Court has failed to discern a basis for remanding this case for further fact finding because the new evidence is not new or material as defined by *Wilkins* and was, in fact, available and considered by the ALJ in her decision.  The ALJ considered Plaintiff's mental impairments under listings for both children and adults.  [R. 27, 37–39.] In finding Plaintiff's mental impairments did not meet the disability requirements of Listings 112.04 and 12.04, both entitled Mood Disorders, the ALJ considered that

* Plaintiff had problems socializing with others, and that change or correction was met with anger and even violence [R. 29];

* Plaintiff reported a one-time self-mutilation behavior secondary to her poor home life and her mental status evaluation was nothing short of fair [R. 30];

* Before the age of 18, Plaintiff had less than marked limitation in interacting and relating with others based on her ability to converse with family member and friends, shop and watch movies, and her two-year relationship with a boyfriend [R. 35];

* After age 18, Plaintiff had no limitations in her activities of daily living; moderate difficulties in her social functioning; moderate difficulties in her concentration, persistence and pace; and had no episodes of decompensation  [R. 38–39].

Based on these findings, the ALJ determined Plaintiff's mental impairments did not meet the disability requirements under the above noted Listings.  Accordingly, Dr. B. Pinner's letter does not add any new medical opinion not already considered by the ALJ.  Thus, the Court finds no error in the Appeals Council's decision to decline review.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


February 2, 2015                           s/Jacquelyn D. Austin
Greenville, South Carolina            United States Magistrate Judge